```
  1              IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF FLORIDA
  2                      ORLANDO DIVISION

  3           Case no.:  6:06-cr-237-Orl-31DAB

  4   UNITED STATES OF AMERICA,       )    Orlando, Florida
                                      )    July 2, 2007
  5               Plaintiff,          )    2:20 p.m.
                                      )
  6               v.                  )
                                      )
  7   WILLIAM IREY,                   )
                                      )
  8               Defendant.          )
      _____)

  9

 10

 11

 12           Transcript of a change of plea

 13        before the Honorable David A. Baker

 14           United States Magistrate Judge

 15

 16

 17

      Appearances:
 18
      Counsel for Plaintiff:   Cynthia Hawkins
 19

 20   Counsel for Defendant:   Kirk Kirconnell

 21
      Tape transcriptionist:   Diane C. Peede, RMR, CRR
 22                            United States Courthouse
                               401 West Central Blvd., #4600
 23                            Orlando, Florida  32801
                               (321) 537-2130
 24
       Proceedings recorded by tape recording, transcript produced
 25    by computer.
```

1                    P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  The case number is 6:06-cr-

3     237-Orl-31DAB, the United States of America versus William

4     Irey.

5              Counsel, please state your appearances for the

6     record.

7              MS. HAWKINS:  Cynthia Hawkins for the United

8     States, Your Honor.  I apologize for the delay.

9              MR. KIRKCONNELL:  Kirk Kirkconnell for the defense,

10    and with me is Mr. William Irey.

11             THE COURT:  All right.  Mr. Irey, I've been advised

12    that you wish to enter a change of plea to Count One of the

13    Indictment.

14             THE DEFENDANT:  Yes, I do, Your Honor.

15             THE COURT:  Let me make sure you understand the

16    nature of the proceedings.  I am not the district judge in

17    this case; I am the magistrate judge.  It's the district

18    judge who will enter any judgment and, if there's a

19    conviction, will do the sentencing.

20             You have a right to have your plea taken before the

21    district judge, but you signed a consent indicating that you

22    want to proceed this afternoon before me for purposes of your

23    plea, understanding that it is the district judge who will

24    enter the judgment.  Is that correct?

25             THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  If you will stand for just a moment,

2  the clerk will administer an oath.

3    THE COURTROOM DEPUTY:  Please raise your right

4  hand.

5    WILLIAM IREY,

6  having been first duly sworn, was examined and testified as

7  follows:

8    THE COURTROOM DEPUTY:  Please be seated.

9    MR. KIRKCONNELL:  Speak up just a little bit.

10    THE COURT:  Mr. Irey, in order for you to enter a

11  plea of guilty, it will be necessary for you to answer

12  questions under oath on the record in the presence of your

13  attorney.  Any statements that you make about the charges

14  here that are not completely truthful could be used against

15  you later in a prosecution for perjury or false statement.

16    If at any time you want to speak privately to your

17  attorney, let me know that and we'll take a break and let you

18  confer.

19    If there's anything that I say or that the

20  attorneys say that you don't understand, either because you

21  can't hear us or we're using words or concepts you don't

22  understand, let me know that.  We'll repeat it for you,

23  explain it to you, let you confer with your attorney,

24  whatever we need to do, to make sure you understand exactly

25  what's going on.

1        Mr. Irey, how old are you?

2        THE DEFENDANT:  Fifty.

3        THE COURT:  And how far did you go in school?

4        THE DEFENDANT:  Graduated high school.

5        THE COURT:  Where did you go to high school?

6        THE DEFENDANT:  Ring Gold in Pennsylvania.

7        THE COURT:  And what kind of jobs have you had?

8        THE DEFENDANT:  Construction.

9        THE COURT:  And how's your health?

10       THE DEFENDANT:  It's good.

11       THE COURT:  Are you a United States citizen?

12       THE DEFENDANT:  Yes, Your Honor.

13       THE COURT:  Are you able to read and write in

14  English?

15       THE DEFENDANT:  Yes, Your Honor.

16       THE COURT:  Have you ever been under the care of a

17  psychologist or a psychiatrist?

18       MR. KIRKCONNELL:  Dr. Berlin.

19       THE DEFENDANT:  Yes.

20       THE COURT:  Tell me about that.

21       THE DEFENDANT:  Currently I'm at Life Stream

22  Behavioral Hospital, and Dr. Valenta is the psychiatrist

23  that's working with me; and Dr. Berlin out of Johns Hopkins.

24       THE COURT:  Are you in a residential program at the

25  hospital?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  All right.  Are you taking any kind of

3  medicine?

4      THE DEFENDANT:  Yes, Your Honor.

5      THE COURT:  What have they got you taking?

6      THE DEFENDANT:  Campral and Pexeva.

7      THE COURT:  What are those medicines designed to

8  do?

9      THE DEFENDANT:  Pexeva is an antidepressant.  It

10  treats depression.  And Campral helps with cravings and also

11  chemical imbalance.

12      THE COURT:  All right.  Is there -- either because

13  of the mental health issues that you're dealing with or the

14  medicines that you're taking, does any of that have any

15  impact on your ability to think clearly or to make decisions

16  for yourself?

17      THE DEFENDANT:  No, they do not, Your Honor.

18      THE COURT:  Has anybody ever questioned or

19  challenged your mental competency?

20      THE DEFENDANT:  No, they have not.

21      THE COURT:  Have you had treatment prior to this,

22  any kind of psychological treatment, psychiatric treatment?

23      THE DEFENDANT:  No.

24      THE COURT:  Have you ever been addicted to drugs or

25  alcohol or medication of any kind?

1          THE DEFENDANT:  I drink alcohol on occasion.

2          THE COURT:  All right.  Other than the medicines

3    that you just mentioned, have you taken any drugs or alcohol

4    or medication in the past 48 hours?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Are you under the influence of anything

7    today that might interfere with your ability to think or to

8    concentrate?

9          THE DEFENDANT:  No.

10          THE COURT:  Do you understand what's happening

11    today?  Are you clear minded?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Have you had any trouble understanding

14    me?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Have you read the Indictment that sets

17    forth the charges against you?

18          THE DEFENDANT:  Yes, I have.

19          THE COURT:  Count One of that Indictment charges

20    you with a violation of Title 18 of the United States Code,

21    Section 2251(c), production of child pornography.

22          What the government would be required to prove in

23    order for you to be found guilty of that charge is that you

24    used minors to engage in sexually explicit conduct outside

25    the United States to produce visual images of that conduct

1   and that you transported those depictions into the United

2   States by using some means to get the images here.  Do you

3   understand the charges against you?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  Do you want a formal reading out loud

6   of the charges or do you waive that?

7          MR. KIRKCONNELL:  Waive it.

8          THE DEFENDANT:  I waive that.

9          THE COURT:  Have you gone over the charges with

10  your attorney?

11         THE DEFENDANT:  Yes, I have.

12         THE COURT:  Have you had enough time to review the

13  charges with your attorney?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Are you satisfied with the services

16  you've received from your attorney in this case?

17         THE DEFENDANT:  Yes, I am.

18         THE COURT:  Does either attorney have any question

19  as to Mr. Irey's competency to proceed with the plea?

20         MS. HAWKINS:  No, Your Honor.

21         MR. KIRKCONNELL:  No, Your Honor.

22         THE COURT:  Mr. Irey, I find that you are competent

23  to proceed with the plea of guilty, if that's what you want

24  to do.  Do you understand that you're not required to plead

25  guilty here, you have a right to maintain your plea of not

1    guilty and to go to trial on these charges?

2         THE DEFENDANT:  Yes, I understand.

3         THE COURT:  Has anybody done anything that you

4    consider to be wrong or unfair to get you to plead guilty to

5    this charge?

6         THE DEFENDANT:  No, they have not.

7         THE COURT:  Have there been any threats or coercion

8    or improper pressure of any kind placed on you to get you to

9    plead guilty?

10        THE DEFENDANT:  No, there has not.

11        THE COURT:  Do you want to plead guilty to this

12   charge because you are guilty or is there some other reason

13   that you want to plead guilty?

14        THE DEFENDANT:  Because I'm guilty.

15        THE COURT:  I'm going to ask the clerk to show you

16   and the attorneys what's been tendered to the Court as a Plea

17   Agreement; and if it's correct, I want you to acknowledge it

18   as your Plea Agreement.

19        Mr. Irey, is this your Plea Agreement?

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  Did you initial it on each page and at

22   each point where there were changes and sign it at the end?

23        THE DEFENDANT:  Yes, I did.

24        THE COURT:  Mr. Kirkconnell, is this the Plea

25   Agreement of your client?

1          MR. KIRKCONNELL:  Yes, Your Honor.

2          THE COURT:  Did you sign it at the end as his

3     attorney?

4          MR. KIRKCONNELL:  Yes, Your Honor.

5          THE COURT:  Ms. Hawkins, is this the Plea Agreement

6     of the government in this case?

7          MS. HAWKINS:  Yes, sir.

8          THE COURT:  Has it been signed and initialed by the

9     appropriate and authorized representatives of your office?

10          MS. HAWKINS:  Yes, Your Honor.

11          THE COURT:  Can you confirm the document, the

12     original of which is in front of us, is the same one that you

13     and your office caused to be filed with the Clerk's

14     electronic filing system?

15          MS. HAWKINS:  Yes, it is.

16          THE COURT:  Okay.  Mr. Irey, did you authorize your

17     attorney to have discussions with the government in order to

18     come up with a Plea Agreement?

19          THE DEFENDANT:  Yes, Your Honor, I did.

20          THE COURT:  Did you read every word of this Plea

21     Agreement, from the very beginning to the very end, before

22     you signed it?

23          THE DEFENDANT:  Yes, I did.

24          THE COURT:  Did you discuss the Plea Agreement with

25     your attorney before you signed it?

1        THE DEFENDANT:  Yes, we did.

2        THE COURT:  Do you understand the Plea Agreement?

3        THE DEFENDANT:  Yes, I do.

4        THE COURT:  Now, the essence of this Plea Agreement

5 is that you're going to plead guilty to Count One of the

6 Indictment and the government, for its part, agrees not to

7 bring any other charges against you related to the conduct

8 that's charged here.  Now, that binds the United States

9 Attorney's Office for this district but does not bind any

10 other prosecuting authority that might have power to bring

11 charges against you.  Do you understand that?

12        THE DEFENDANT:  Yes, I do.

13        THE COURT:  The government also is agreeing to make

14 recommendations or take certain positions with respect to

15 your ultimate sentence.  I want you to understand that

16 regardless of what position the government may take, it's not

17 going to be binding on the district judge.  The district

18 judge will do his own analysis and come to his own

19 conclusions, and if it's different from what the government

20 urges or you or your attorney ask for, if it's worse for you

21 than you're hoping for, you're still going to be bound by

22 what the district judge does.  You won't be able to withdraw

23 your guilty plea.  Do you understand that?

24        THE DEFENDANT:  I understand that.

25        THE COURT:  The government is also agreeing to

1    consider the possibility of filing a motion for your benefit

2    to recognize substantial assistance that you may have in the

3    past or may in the future provide with respect to prosecution

4    of others.  The government's not promising to file such a

5    motion, only to consider doing so.

6            So long as the government acts in good faith, you

7    can't force the government to file that motion, even the

8    court can't do that.

9            What's more, even if the motion is filed, it may

10   not be granted or it may not be granted to the extent that

11   you or the government would wish.  Do you understand that?

12           THE DEFENDANT:  Yes, I do.

13           THE COURT:  Now, there's a statement of the facts

14   in the case in here.  It's on page 15 of your Plea Agreement.

15   Have you read that statement of facts?

16           THE DEFENDANT:  Yes, I have.

17           THE COURT:  Is that statement of facts true and

18   correct?

19           THE DEFENDANT:  Yes, it is.

20           THE COURT:  Now, you and the government have agreed

21   that those are the facts of the case, but it may be that by

22   the time of sentencing there will be other or different facts

23   that come into the record; and if so, the district judge is

24   not going to be bound or limited to the facts that are here,

25   but can rely on those other or different facts.  Do you

1    understand that?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  The reason I talked about sentencing

4    this way is you're not going to be sentenced today, even if

5    the district judge were here and presiding.  Instead,

6    sentencing will be scheduled in about 75 days, and in the

7    meantime a probation officer will be assigned to do a

8    background investigation about you and about the charges.

9              A report will be prepared.  You'll get a copy of

10   it.  So will the attorneys.  You'll have a chance to review

11   it with your attorney and raise objections to any parts that

12   you think are wrong or need to be corrected.  It might be

13   necessary for the district judge to hold a hearing if those

14   things can't be resolved otherwise.

15             There will, in any event, be a final sentencing

16   hearing at which time you and the attorneys will have a

17   chance to address the Court, and it's only at that point that

18   you're going to know what your sentence will actually be.  Do

19   you understand that process?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  Now, under your Plea Agreement, you

22   are, for most purposes, giving up any right to appeal the

23   sentence that's imposed by the district judge.  There are

24   certain exceptions to that.  If the government were to appeal

25   the sentence, which it has the right to do, then you could

 1   appeal.  If the sentence was above the statutory maximum or

 2   in violation to the Eighth Amendment to the Constitution or

 3   was in excess of the guideline range that the district finds

 4   applies to you, you could challenge those things; but

 5   otherwise you're going to be bound by what the district judge

 6   does.  You won't be able to challenge it on appeal or any

 7   kind of a collateral attack under Section 2255, habeas corpus

 8   or otherwise.  Do you understand that?

 9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  Now, this Plea Agreement that we've

11   been talking about, does it contain all of the promises that

12   you've made to the government and all of the promises the

13   government has made to you about this case?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Is there anything else, orally or in

16   writing, any kind of promises or representations that you're

17   relying on as a part of your decision to plead guilty that's

18   not covered in this Plea Agreement?

19          THE DEFENDANT:  No.

20          THE COURT:  Let me advise you as to the penalties

21   or potential penalties you're facing.  This is not your

22   actual sentence but the maximum.  Count One carries a minimum

23   sentence of 15 years in prison, a maximum of sentence of up

24   to 30 years in prison, a fine of $250,000, a term of

25   supervised release of life, and you would be ordered to pay a

1    special assessment of $100 at the time of sentencing.

2         You would also be subject to the possibility of

3    being ordered to make restitution to any identified victims

4    in the case.

5         Have any of the victims been identified?

6         MS. HAWKINS:  No.

7         THE COURT:  In addition, there's provisions in the

8    Plea Agreement referencing forfeiture of computer equipment.

9    I note that the reference is to some real property that been

10   deleted.  Does that mean that the government has decided not

11   to go after that property?

12        MS. HAWKINS:  Your Honor, there's no legal basis

13   for doing so, we've so concluded.

14        THE COURT:  All right.  Is there any other property

15   that is subject to forfeiture here?

16        MS. HAWKINS:  Not that we know of at this time.

17        THE COURT:  All right.  Are there any other

18   possible penalties that the defendant is facing?

19        MS. HAWKINS:  No, Your Honor.  I don't know if it's

20   a penalty.  I know that he would be required to register as a

21   sex offender.  That might be a collateral issue.

22        THE COURT:  All right.  Mr. Irey, your actual

23   sentence will be determined by the district judge following

24   the process that I've already described to you.  As a part of

25   that, the district judge will make the determination as to

1   how the sentencing guidelines and the statutes apply to you

2   and then whether to uses the guidelines or some other basis

3   for determining what your sentence will be.

4         The district judge will take into account a great

5   many factors, including any victims of your offense, your

6   role, any obstruction of justice that may have occurred, your

7   acceptance of responsibility, the number of activities

8   involved, time, other factors as well, along with your

9   criminal history, if you have any.  All of those things will

10   be considered by the Court; do you understand that?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  I'm going to repeat myself here, but

13   the -- because of the need to get the Pretrial Services'

14   report for the district judge to do his own analysis and

15   decision making, you're not going to know today what your

16   sentence will be, until the district judge pronounces that

17   sentence.  Again, if it's worse for you than you're hoping

18   for or than the attorneys have talked to you about or have

19   argued to the Court, you're still going to be bound by your

20   plea.  You won't be able to withdraw it.  Do you understand

21   that?

22         THE DEFENDANT:  I understand that.

23         THE COURT:  Do you understand that parole has been

24   abolished and that if you are sentenced to prison, that

25   you'll be serving all or almost all of that time?

1          THE DEFENDANT:  Yes, I understand that.

2          THE COURT:  Supervised release, that's a period of

3   time that would follow imprisonment.  During that time you

4   would be release under but subject to a great many

5   conditions, including the registration requirement that Ms.

6   Hawkins just mentioned and other conditions as well under the

7   supervision of a probation officer; and if you were to

8   violate your conditions, you could be sent back to prison.

9   Do you understand that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Do you understand that if you have

12   income or assets, if you have the ability to pay, the Court

13   could assess against you and require that you pay or

14   contribute to the cost of your imprisonment or your

15   supervision?

16          THE DEFENDANT:  Yes.

17          THE COURT:  I don't know if I said this.  You would

18   be subject to the possibility of a fine of $250,000 on Count

19   One.

20          Do you understand your sentence could include a

21   requirement that you perform community service?

22          THE DEFENDANT:  Yes.

23          MS. HAWKINS:  Your Honor, there is one other thing

24   counsel reminded me of.  There is a possibility of a civil

25   commitment following the completion of the sentence.  That's

1  now a possibility within the Bureau of Prisons, but it could

2  be a civil commit, like, analogous to the Jimmy Rice type.

3       THE COURT:  Have they actually done that with any

4  federal prisoners?

5       MS. HAWKINS:  I believe they're implementing it.

6       MR. KIRKCONNELL:  I don't think it's actually in

7  effect yet, Your Honor; but just out of an abundance of

8  caution --

9       THE COURT:  Sure.

10      MR. KIRKCONNELL:  -- I've discussed this with Mr.

11 Irey; and those things, you never know if they're going to

12 make them retroactive or not.  So I think out of an abundance

13 of caution, we talked about that.

14      THE COURT:  I guess most of the people subject to

15 that wouldn't be getting to that point in their sentence.

16      MS. HAWKINS:  That's true, Your Honor.  I found out

17 because of Mr. Kirkconnell, also, and I thought that was a

18 good thing to mention.

19      THE COURT:  Mr. Irey, do you understand what we're

20 talking about?  There's a provision in the statutes that

21 creates the possibility that after service of any criminal

22 sentence, that you could be civilly committed and held.

23      MR. KIRKCONNELL:  Until you're determined not to be

24 a danger any more.

25      THE COURT:  Right.  And there's -- it gets fairly

1   complicated in terms of where you are and what kind of

2   treatment you're supposed to be getting and what

3   determinations need to be made, but it's a potential hold

4   that the government may have on you apart from the criminal

5   proceedings here.  There's a difference between the criminal

6   proceedings and the civil commitment, some of which are

7   pretty technical, that Congress and the courts and lawyers

8   debate about at some length; but it is a further procedure or

9   proceeding that, if the authorities think applies to you,

10  could be applied to you.  Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  All right.  Mr. Kirkconnell, are you

13  aware of any other penalties that should be explained to the

14  defendant?

15          MR. KIRKCONNELL:  No, Your Honor.

16          THE COURT:  Mr. Irey, do you understand the

17  possible penalties that you're facing and the sentencing

18  process?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  Any questions about either of those?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Let me advise you as to your rights.

23  On the charges in this Indictment, you have the right to a

24  trial by a jury of twelve persons.  At that trial you would

25  be presumed innocent.  Before you could be found guilty, the

1  government would be required to prove that you were guilty

2  by competent evidence and beyond a reasonable doubt. You

3  would not have to prove that you were innocent.

4          In the course of the trial you would have the right

5  to confront the witnesses who testify against you. Witnesses

6  for the government would have to come to court and testify in

7  your presence. Through your attorney, you would have the

8  right to confront those witnesses and to cross-examine them

9  and to seek to exclude any testimony or evidence he believes

10  is improper.

11          You would have the right to compulsory process or

12  subpoenas to require witnesses and evidence be brought to

13  court and to have them presented on your behalf. You have

14  the right to testify in your own behalf, if you wish. You

15  also have the right not to testify; and if you made the

16  choice not to testify, there could be no suggestion or

17  inference of your guilt from the fact that you chose not to

18  testify. In other words, you have a privilege against

19  self-incrimination and the right to remain silent.

20          Now, if you plead guilty and I accept your plea, do

21  you understand that you're waiving your right to trial and

22  the other rights I've just mentioned, there will be no trial,

23  you're giving up any possible defenses that you have to this

24  charge, and you'll be found guilty and subject to sentencing

25  without any further proceedings? Do you understand that?

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Do you understand that by pleading

3      guilty, you're also waiving your right not to incriminate

4      yourself, because in just a moment I'm going to ask you to

5      tell me what you did so that I can be satisfied there's a

6      basis for this charge?  Do you understand that?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  Do you understand that by pleading

9      guilty and waiving your right to trial, you're giving up your

10     right to appeal from the finding of guilt, not just the

11     sentencing issues we've talked about, but from the finding of

12     guilt, you're going to be bound by that by that?  You won't

13     be able to challenge it on appeal or any kind of a collateral

14     attack under Section 2255, habeas corpus or otherwise; do you

15     understand that?

16             THE DEFENDANT:  Yes, I do.

17             THE COURT:  This is a felony charge, and upon

18     conviction, you will be losing your civil rights, including

19     the right to vote, to keep and bear firearms, to hold public

20     office, and to serve on a jury.  And as we've previously

21     noted, you would be subject to the registration requirement

22     and the possibility of a civil commitment, and you may find

23     it difficult to get certifications for various employments

24     for other matters.  Do you understand that?

25             THE DEFENDANT:  Yes.

1    THE COURT:  Let me remind you that you do have the

2  right to an attorney, the advice of counsel, at every stage

3  of this case.  That doesn't change whether you plead guilty

4  or not.  Either way, you have an attorney to represent you.

5  If you could not afford one, one would be appointed for you.

6  Do you understand that?

7    THE DEFENDANT:  Yes.

8    THE COURT:  All right.  Mr. Irey, tell me in your

9  own words what you understand to be the charges against you

10  in this case and tell me what it is that you did.

11    (Discussion held off the record off between the

12  defendant and Mr. Kirkconnell.)

13    THE DEFENDANT:  Went to -- overseas, visited

14  numerous brothels where they had underage children and

15  photographed them, had sex with them, and had them on my

16  laptop when I entered the United States.

17    THE COURT:  When you said you had them on your

18  laptop, you mean the images that you had recorded overseas?

19    THE DEFENDANT:  Yes, Your Honor.

20    THE COURT:  And when did this happen?

21    THE DEFENDANT:  It happened over a period of four

22  years.

23    THE COURT:  When did you bring the laptop back into

24  the country with the pictures on it?

25    MR. KIRKCONNELL:  The last time.

1          THE DEFENDANT:  The last time.

2          MR. KIRKCONNELL:  When was that?  Last year, 2006?

3          THE DEFENDANT:  Yeah, 2006.

4          THE COURT:  All right.  And where did you -- where

5     did you arrive back in the United States with the pictures?

6          THE DEFENDANT:  Chicago.

7          THE COURT:  Did you then bring them here to

8     Orlando?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Ms. Hawkins, do you have a statement

11    facts that you believe the government could prove beyond a

12    reasonable doubt were this case to go to trial?

13         MS. HAWKINS:  Yes, Your Honor.  The government

14    would prove by competent evidence beyond a reasonable doubt,

15    including by testimony of witnesses and the forensic

16    examination of computers and related records, the following:

17    Agents of ICE, Immigration and Customs Enforcement, executed

18    a search warrant on the defendant's computer in Orlando in

19    August 2006.  Agents found numerous images of child

20    pornography featuring the defendant.  He produced these

21    images overseas with prepubescent girls and transported them

22    to the United States and onward to Orange County, Florida.

23         The defendant admitted to having sex with children

24    he knew to be minors and to knowingly producing the child

25    pornography that was seized by the agents during the search

1    warrant execution.

2             He also admitted to knowingly transporting the

3    images of child pornography that he had produced into the

4    United States from a place outside thereof, which were later

5    found on his computer.

6             THE COURT:  Mr. Irey, you heard the statement from

7    the United States Attorney.  Is her statement of the facts

8    true and correct?

9             THE DEFENDANT:  Yes, it is.

10             THE COURT:  You've had a lengthy discussion as to

11   what effect a plea of guilty would have on you and on your

12   rights.  Having heard that, is it still your desire to plead

13   guilty to Count One of the Indictment in this case?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Is there anything else that you want to

16   tell me or ask me that has any bearing on your decision to

17   plead guilty that we haven't already covered?

18             THE DEFENDANT:  No, Your Honor.

19             THE COURT:  Do you want to make any additions or

20   changes to any statements or answers that you've already

21   given?

22             THE DEFENDANT:  No, Your Honor.

23             THE COURT:  Do you want to have any further

24   discussion with your attorney before I ask you to plead?

25             (Discussion held off the record between the

1    defendant and Mr. Kirkconnell.)

2         THE DEFENDANT:  No, Your Honor.

3         THE COURT:  Have you had any trouble understanding

4    me or the attorneys at any time during the hearing?

5         THE DEFENDANT:  No, Your Honor.

6         THE COURT:  Mr. Irey, how do you plead to Count One

7    of the Indictment in case number 06-criminal-237?

8         THE DEFENDANT:  Your Honor, I plead guilty.

9         THE COURT:  Are you freely and voluntarily entering

10   this plea of guilty?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  I determine that your Plea Agreement

13   has been made knowingly, intelligently and voluntarily, and

14   not the result of force or of threats or of promises except

15   for those matters contained in the Plea Agreement.  I also

16   find there's an independent factual basis for each essential

17   element of the crime as charged.

18        I'll direct the Probation Office to undertake an

19   investigation and prepare a report for the district judge's

20   use.

21        If there are any pending motions, they'll be denied

22   as moot.

23        What's the positions of the parties regarding Mr.

24   Irey's status pending sentencing?

25        MR. KIRKCONNELL:  I'm sorry, Your Honor?

1          MS. HAWKINS:  Your Honor, he's currently confined

2     in an in-patient treatment facility.  There's no objection to

3     a continuation of the terms and conditions.  He's not free to

4     leave that facility.

5          THE COURT:  Right.  I don't think I've seen any

6     reports from all that, but are you monitoring that in any way

7     in terms of his progress?

8          MS. HAWKINS:  No, sir.  I would hear if there were

9     problems.

10          THE COURT:  Well, that's what I meant, there have

11     been no reports of any problems.

12          MR. KIRKCONNELL:  Your Honor, I think Pretrial

13     Services is doing it, because today, to get him transported

14     here, we had to have Mr. Andrews, who's a licensed and bonded

15     private investigator, clear it with them before he could come

16     down here today.

17          THE COURT:  Right.

18          THE DEFENDANT:  And they've come up several times.

19          MR. KIRKCONNELL:  And Mr. Irey tells me they've

20     come up several times to check on him.

21          THE COURT:  In the absence of any apparent

22     difficulties, we'll continue all of those conditions; and the

23     matter will be scheduled for sentencing in about two and a

24     half months.

25               Anything else in this case at this time?

1    MS. HAWKINS:  No, Your Honor.  Thank you.

2    MR. KIRKCONNELL:  No, Your Honor.  Thank you.

3    THE COURT:  We're in recess.

4    (Proceedings were terminated at 2:45 p.m.)

5    - - - - - - - -

6    Reporter's Certification

7    I certify that the foregoing is a correct transcript from the

8    record of proceedings in the above-entitled matter.

9

10

11

12    Diane Peede, RMR, CRR
      Official Court Reporter
13    United States District Court
      Middle District of Florida
      Date: Feb 14, 2008

14

15

16

17

18

19

20

21

22

23

24

25